IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:17-cv-761-WC |
| ) | [wo] |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Joseph Bradley ("Plaintiff" or "Bradley") applied for disability insurance benefits under Title II of the Social Security Act ("the Act") and Supplemental Security Income under Title XVI alleging a disability date of June 10, 2011. (R. 175-95). The applications were denied. He timely appealed and requested a hearing. (R. 64-97, 100-01). A hearing was held before the Administrative Law Judge ("ALJ"). (R. 43-63). The ALJ rendered an unfavorable decision on December 15, 2016. (R. 22-42). The Appeals Council denied Plaintiff's request for review. (R. 1-7). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

the record and briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is to be **AFFIRMED**.

## I.  NATURE OF THE CASE

Bradley seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla -- i.e., the evidence must do more than merely create a suspicion  of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing

*Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

#

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). The Social Security Act"s Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. See 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one

#

resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant=s Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was fifty-six years old as of the alleged onset date. (R. 37, 190). Plaintiff graduated high school and attended two years of college where he earned a degree in electric technology. (R. 50). He worked from 2000-2011 for West Point Homes performing duties such as pulling boxes, stacking a pallet jack by hand, and loading trucks for delivery. (R. 50-51, 213-14, 263, 373). He carried twenty-five pound boxes frequently, forty pounds regularly, and at times lifted fifty pound boxes. (R. 214). Plaintiff alleged disability onset on June 10, 2011. (R. 27).

The ALJ found Plaintiff's severe impairments included asthma and hypertension. (R. 27). Based on these impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a reduced-range of medium work as follows:

> [Bradley] can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently. He can push and pull within those same exertional limits. He can stand or walk about 6 hours and can sit for at least 6 hours out of an 8-hour workday. He can frequently stoop, crouch, kneel, crawl, and climb – but not ladders, ropes or scaffolding. He can perform tasks not involving exposure to extremes of temperature or humidity. He can perform tasks not involving concentrated exposure to pulmonary irritants such as dust, gases, fumes and smoke.

(R. 29). Based on this RFC and the testimony of the VE, the ALJ found Plaintiff was able to perform his past relevant work as an order selector. (R. 36). Alternatively, the ALJ found that if Bradley could not return to his past relevant work there were a significant number of jobs in the national economy he could perform. Based upon the testimony of the VE, the ALJ identified the following representative occupations: "Assembler," "Machine Packer," and "Laundry Worker." (R. 37). Thus, the ALJ found Plaintiff not disabled. (R. 36-37).

## V. MEDICAL HISTORY

The Court adopts, in large part, the facts as set out in Plaintiff's brief pertaining to his medical history. (Doc. 11 at p. 3). Bradley has had asthma since childhood. (R. 371). Primary care physician, Chandra Shekar, MD, of Greenville Clinic, has treated Bradley since 2004, and primarily treated Bradley's chronic asthma with inhalers. (R. 286-354). Although Plaintiff represents that he continued to see Dr. Shekar regularly for primary care treatment, the record does not include treatment records dated after January 12, 2007 and before January 2, 2015. (Doc. 11, Pls. Brief, at p.3 citing R. 286-354, 392-416).

In early 2012, Bradley began experiencing progressive shortness of breath ("SOB"). (R. 371). On December 13, 2013, Bradley was hospitalized overnight to rule out a coronary event, and an EKG was abnormal. Discharge diagnoses included pleuritic chest pain and asthma. (R. 358-67).

Dr. Shekar's records resume on January 2, 2015 and show he saw Bradley monthly for chronic asthma/COPD, and musculoskeletal impairments through the administrative hearing. (R. 392-416). Bradley continued to experience persistent shortness-of-breath ("SOB"), chest tightness, and wheezing upon exertion. (R. 407-413). After a series of acute asthma exacerbations, Dr. Shekar prescribed him a home nebulizer in June 2015. (R. 406-07, 412). On November 29, 2015, Bradley required emergency treatment for uncontrolled SOB, pleuritic chest pains, wheezing and coughing. (R. 380-86). The emergency treatment records describe these respiratory conditions as "mild." (R. 381).

## VI. PLAINTIFF'S ARGUMENTS

Plaintiff identifies the following three issues in his "Statement of the Issues:"

1) Whether the ALJ erred in his evaluation of an examining medical source opinion?

2) Whether the ALJ erred in concluding Plaintiff can perform his past relevant work?

3) Whether the ALJ erred in evaluating Plaintiff's credibility?

Doc. 11 at 1.

## VII. ANALYSIS

**A. The ALJ properly considered the opinion of the state agency examining physician's opinion.**

#

Plaintiff argues that the ALJ erred by affording the opinion of the state agency examining physician, Dr. Celtin Robertson, insufficient weight. Doc. 11 at 6-9. Dr. Robertson conducted a consultative examination of Plaintiff on February 2, 2015. Tr. 371. In relevant part, on physical examination, Dr. Robertson observed normal muscle bulk and tone and 5/5 motor strength in all extremities, and substantially normal abilities in Plaintiff's gross and fine motor skills. Tr. 372. Plaintiff walked unassisted with a normal gait and sat without distress, but exhibited "exacerbation of shortness of breath on brief walking, squatting, and range of motion." Tr. 373. Dr. Robertson diagnosed asthma. Tr. 372. Dr. Robertson further opined, in relevant part, that Plaintiff, at a maximum, can stand and walk "[u]p to six hours, limited by shortness of breath on exertion;" can occasionally lift 25-50 pounds, "limited by difficulty with shortness of breath on exertion;" and can "occasionally reach overhead and reach forward with bilateral upper extremities due to shortness of breath exacerbation." Tr. 375.

The ALJ reviewed Dr. Robertson's findings in detail. Tr. 32-34. The ALJ gave "some weight" to Dr. Robertson's opinion to the extent he opined that Plaintiff may do a range of medium exertional work. Tr. 35. But the ALJ rejected Dr. Robertson's findings about Plaintiff's "degree of limitation in reaching and postural movements" because the ALJ found it "inconsistent with medical findings[,]" as Plaintiff's physical examinations "do not show limited range of motion of claimant's back of peripheral joints" and "X-rays reveal no abnormalities of claimant's heart, lungs or knees." Tr. 35.

Plaintiff argues that Dr. Robertson's opinion "should have been afforded 'significant' rather than 'some' weight" under the regulatory factors controlling the

Commissioner's consideration of non-treating examining medical source opinions. Doc. 11 at 8. As Plaintiff notes, those factors include the relationship between the examining physician and the claimant, supportability, consistency with the remainder of the record and specialization. Doc. 11 at 7; 20 C.F.R. § 404.1527(d). Plaintiff further argues that the ALJ erroneously disregarded those limitations opined by Dr. Robertson that would "direct a finding of disability" while improperly relying only on those aspects of Dr. Robertson's opinion that supported the RFC articulated by the ALJ. *Id.*

The law is well-settled: a one-time examining source is not entitled to great weight because there is no treatment relationship between the doctor and patient. *See McSwain v. Bowen,* 814 F. 2d 617, 619 (11th Cir. 1987). Moreover, an opinion about whether a plaintiff is disabled is not a medical opinion entitled to significant weight because that issue is dispositive of the case. *See, Hutchinson v. Astrue,* 408 F. App.'x 324, 327 (11th Cir. 2011). Thus, the ALJ was not required by law to give the disability opinion of Dr. Robertson, a non-treating, examining physician, great weight.

As for Plaintiff's argument that the ALJ erred by failing to properly apply the regulatory factors to Dr. Robertson's opinion, the Eleventh Circuit has held that ALJs are "not required to explicitly address each of those factors" but rather must provide good cause to reject even a treating physician's opinion. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App.'x 830, 833 (11th Cir. 2011). Indeed, "absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v.Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011). (Citations omitted). However, "good cause" to stray from the treating physician's opinion exists when the: (1)

#

treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel,* 631 F.3d at 1179. If the ALJ does stray from the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. (Citations omitted).

Even though Dr. Robertson was not a treating physician, the ALJ clearly set forth his reasons for discounting his opinion as to Plaintiff's degree of limitation in reaching and postural movements, and those reasons provided "good cause" for the ALJ's decision. Again, the ALJ stated as follows:

> The undersigned disagrees with Dr. Robertson's degree of limitation in reaching and postural movements, as they are inconsistent with medical findings. Physical examinations do not show limited range of motion of claimant's back or peripheral joins. X-rays reveal no abnormalities of claimant's heart, lungs or knees.

(R. 35). Furthermore, the ALJ noted that despite Plaintiff's exhibiting shortness of breath with walking, squatting, and range of motion, Dr. Roberson's physical examination did not show Plaintiff demonstrated any difficulties with movement. (R. 33, 373-74). Indeed, the ALJ noted Dr. Robertson observed on examination of Plaintiff that "[w]hile his breathing was audible, he was not in respiratory distress." *Id.* The ALJ further noted that Dr. Robertson observed he had clear lungs throughout the examination, his breath sounds were not decreased and the expiratory phase was not prolonged. *Id.* Also, the ALJ noted that Plaintiff had not shown any marked respiratory distress during any of his other physical examinations. (R. 30, 35). Finally, the Court's own independent review of the record

demonstrates that the other examinations showed at most mild respiratory distress. (R. 361, 364, 381, 392-407, 409, 411-413). The record thus provides substantial evidence for the ALJ's decision to afford only "some" weight to Dr. Robertson's opinion regarding Plaintiff's postural and exertional limitations, while adopting that portion of the opinion that supports Plaintiff's ability to perform a range of medium work. Accordingly, the Court concludes that the ALJ properly considered the opinion of Dr. Robertson.

**B. The ALJ did not err in concluding Bradley can perform his past work.**

Plaintiff argues that the ALJ erred in finding that he may return to his past relevant work. Plaintiff first contends that the ALJ mischaracterized his past relevant work and that he actually performed the work of a "material handler" as opposed to an "order selector." Doc. 11 at 9. When testifying that the Plaintiff's past work was that of an "order selector," the VE cited to the Dictionary of Occupational Titles (DOT) number 922.687-58, which describes the order selector position and stated that his testimony was consistent with the DOT. (R. 59, 62). Indeed, the DOT describes the following tasks of an order selector: "reads production schedule, customer order . . . *conveys materials . . . by hand, handtruck, or electric handtruck* . . . assembles customer order and places orders on pallets or shelves". *See* U.S. Dept. Of Labor, DOT § 922.687-058, 1991 WL 688132 (emphasis supplied). Further, the work is described as "Medium work - exerting 20 to 50 pounds of force occasionally." *Id.*

In describing his work, Plaintiff testified that he performed duties such as pulling boxes, stacking a pallet jack by hand, and loading 18-wheel trucks and 53' trailers by hand. (R. 50-51, 213-14, 263, 373). He carried 25-pound boxes frequently, 30-40

12

#

pounds regularly and at times lifted 50-pound boxes. (R. 50-51, 214). Plaintiff's counsel, who was present at the hearing where the VE and Plaintiff testified, raised no objection to the VE's characterization or testimony concerning Plaintiff's past work. Accordingly, the Court concludes that substantial evidence—namely, the VE's testimony—supports the ALJ's characterization of Plaintiff's past work.

Moreover, even if the ALJ had erred in finding that Plaintiff could return to his past relevant work due to a purported mischaracterization of that relevant work, the ALJ made the alternative finding at Step Five that, given his RFC, Plaintiff may perform jobs available in significant numbers in the national economy. Tr. 36-37. Plaintiff does not argue that any of the medium-level representative occupations identified by the ALJ are inconsistent with the RFC articulated by the ALJ, irrespective of whether his prior relevant work was at the heavy exertional level.

Alternatively, Plaintiff argues that, even if the ALJ correctly characterized his work, the ALJ erred in finding that he could return to this past work as an order selector. Specifically, Plaintiff argues that the ALJ failed to include in the hypothetical to the VE Dr. Robertson's reaching restrictions. Doc. 11 at 10. The law is well-settled: "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Barnhart,* 363 F. 3d 1155, 1161 (11th Cir. 2004). The ALJ did not incorporate Dr. Robertson's opined reaching limitations in Plaintiff's RFC. Tr. 29. For

13

the reasons more fully addressed in Section A, the Court concludes that the ALJ properly discounted Dr. Robertson's opinion as to Plaintiff's limited ability to reach. Accordingly, the Court concludes that the ALJ did not err in failing to include this limitation in the hypothetical posed to the VE.

**C. The ALJ did not err in evaluating Bradley's credibility.**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler,* 782 F. 2d 1551, 1553 (11th Cir. 1986). Thus, if the Commissioner fails to articulate reasons for refusing to

14

credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial evidence. If there is no such support, then the testimony must be accepted as true. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir. 1987).

In the instant action, the ALJ concluded that

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 35). Specifically, the ALJ considered Plaintiff's knee pain as a condition that limited his ability to work. (R. 34-35, 212). However, ALJ noted the normal imaging of Plaintiff's knees. (R. 35, 369, 387, 415). He also noted that during the consultative examination, Plaintiff had good range of motion in his lumbar spine, shoulders, ankles, and wrists, and that he had normal motor strength, handgrip, sensation, and reflexes. (R. 35, 372-74).

The ALJ also considered that Plaintiff's complaints of shortness of breath had not been recorded at the marked level of respiratory distress during physical examinations. (R. 35, 364, 373-74, 381, 392-407, 409, 411-13). Additionally, the ALJ considered the conservative nature of Plaintiff's treatment for asthma. (R. 35). Specifically, he pointed to evidence that Plaintiff's asthma was treated by his primary care physician with nasal spray and bronchodilators. (R. 35, 392-413). Although Plaintiff testified he used a nebulizer every four hours "as needed" and sometimes "more often" (R. 52, 53), Plaintiff failed to identify medical records supporting such frequent need for or use of treatment. Rather, the Court's independent review of the record confirms that most of the medical

15

records refer to use of an inhaler and recommend regular exercise.[2] (R. 393-407, 409, 411-12). Also, the ALJ noted the Plaintiff received no breathing treatments at his doctor's appointments, except for one emergency room visit where he received an oral steroid. (R. 35, 382, 392-413).[3]

The ALJ also identified inconsistencies between Plaintiff's statements and other evidence in the record when evaluating Plaintiff's subjective complaints. (R. 34-35). Specifically, the ALJ recognized that Plaintiff's statement in his disability report that he stopped working in June 2011 because of his medical condition (R. 213) was in conflict with his hearing testimony that he was laid-off shortly before the company closed and, thereafter, he looked for work. (R. 34, 50, 52). The Court notes the ALJ reasoned that Plaintiff did not consider himself disabled because he continued to work after he was laid-off. (R. 34).

The ALJ also observed that Plaintiff's allegations of shoulder and back pain and the side effects from medication were not consistent with the medical record. (R. 34). Specifically, the ALJ noted that Plaintiff alleged in his disability report that shoulder and back pain, in addition to other impairments, limited his ability to work. However, at his hearing Plaintiff did not mention shoulder or back pain. (R. 34, 47-58, 212). The ALJ also considered that Plaintiff testified that his medications caused dizziness, sleepiness, and

---

2 The Court notes that one record does recommend using a nebulizer regularly, but does not include any further specific directions. (R. 392)
3 The Court notes that Plaintiff visited the emergency room another time in December 2013, but that there is no record that he received a breathing treatment or oral steroid at that visit. (R. 361-64). Rather, as the ALJ noted, an examination during this visit showed clear lungs with no wheezes, crackles or labored breathing (R. 32, 361, 364) and a normal chest x-ray. (R. 32, 367).

#

frequent urination and that he needed to rest throughout the day. (R. 57-58). However, progress notes showed he was doing well and taking his medications with little difficulty. Further, he did not mention in his function report that needed to rest during the day. (R. 35, 219, 394-95, 397-403). Accordingly, the Court concludes that the ALJ gave specific reasons for discounting Plaintiff's credibility, and based upon its independent review of the record that substantial evidence supports these reasons.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision.

A separate judgment will be entered.

DONE this 16th day of November, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE

#